Dear Sheriff Webre:
This office is in receipt of your opinion request sent via facsimile on March 10, 1993, which has been assigned to me for review. We have received a similar request from Mr. Scotty Chabert, attorney for the Lafourche Parish Council. This opinion is responsive to both requests.
You inquire about the legality of a proposed intergovernmental agreement between the Lafourche Sheriff and the Lafourche Parish Council. You inquire whether certain monies allocated to the Lafourche Parish Sheriff's office may be transferred to the Parish for the improvement of lighting conditions in areas and streets which are located in areas that are known for having illegal drug activity.
Article VII, Section 14 of the Louisiana Constitution of 1974 governs the transfer of public funds between political subdivisions of the state. LSA-Const. Art. VII § 14 (A), (B), and (C), in pertinent part provide:
 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 (B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy; (2) contributions of public funds to pension and insurance programs for the benefit of public employees; (3) the pledge of public funds, credit, property, or things of value for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law. . . .
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
The Supreme Court has interpreted Art. VII § 14 to be violated whenever the State or a political subdivision seeks to give up something of value when it is under no obligation to do so. City of Port Allen v. Louisiana Risk Management, Inc.,439 So.2d 399 (La. 1983); Guste v. Nicholls College Foundation,564 So.2d 682 (La. 1990). Exceptions to the prohibition against the loan, pledge, or donation of public funds are contained in Paragraph (B). Paragraph (C) of Section 14 authorizes the state and its political subdivisions to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals.
An intergovernmental agreement is a type of cooperative endeavor, authorized under the provisions of LSA-R.S. 33:1324, which provides, in part:
 Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, . . . necessary to accomplish the purposes of the agreement, . . . [which] may include . . . activities concerning:
(1) Police, fire and health protection.
 (2) Public utility services, such as water, electricity, gas, roads, . . . (Emphasis added).
The intergovernmental agreement under review here must still withstand scrutiny under LSA-Const. Art. VII § 14(C). A constitutionally sanctioned cooperative endeavor must meet a three part test: (a) the public agency has a legal obligation to expend public funds, (b) the expenditure must be for a public purpose and (c) the expenditure must create a public benefit proportionate to its cost. See Attorney General Opinion Number 92-722.
The provisions of LSA-R.S. 40:2601, et. seq., provide for the establishment of a Special Asset Forfeiture Fund, under the control of the District Attorney of the parish. After appropriate court proceedings as set out in the act, monies are deposited into the fund and are disbursed according to statute. Sixty percent of the remaining funds are allocated to the "law enforcement agency . . . making the seizure, such proceeds to be used in drug law enforcement . . .". LSA-R.S. 40:2616.
We are of the opinion that the Sheriff has a legal obligation to use these proceeds in furtherance of drug law enforcement. Use of the monies to facilitate adequate lighting in areas known to have frequent illegal drug traffic accomplishes this purpose.
As a home rule charter government, the Lafourche Parish Council enjoys all inherent power necessary, requisite or proper for the fulfillment of the obligations and public purposes mandated by the home rule charter, as long as such purposes and powers are not prohibited by general state law or the constitution. Further, the Lafourche Parish Council, as local governing authority, has the legal obligation to provide for the safety and welfare of its citizenry. Such an obligation includes the protection of the health, safety and property of its citizens from the dangers of illegal activity, including drug-related crimes.
In summary, this office is of the opinion that the Sheriff has a legal obligation to use these monies in drug law enforcement. Use of these monies to provide adequate lighting in areas known to have frequent illegal drug traffic accomplishes this requirement. The public benefit received is the reduction of drug-related activity. Because these requirements are met, the proposed intergovernmental agreement is a legally permissible cooperative endeavor.
 Very truly yours, RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0213E